**Jeffrey Dean ANDERSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. A14–87–1000–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 29, 1989.

Henry L. Burkholder, III, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

OPINION

JUNELL, Justice.

A jury convicted appellant of involuntary manslaughter and the court assessed punishment at confinement for three years in the Texas Department of Corrections. In three points of error appellant claims: (1) the court gave the jury an incorrect definition of involuntary manslaughter; (2) the court unconstitutionally diminished the State's burden of proof by improperly instructing the jury on the law; and (3) the evidence was insufficient to establish appellant's guilt. We reverse and remand.

Appellant testified that on Saturday, July 18, 1987, he was employed on a Houston highway construction project and left the job at 5:30 p.m. After stopping for some beers and food with fellow workers, he departed for home about 10:30 p.m. Appellant testified that while he proceeded north on an unlighted four-lane highway in the lane closest to the oncoming traffic, a car to his right prevented his movement into the right lane and a white car suddenly

swerved into his path. Appellant testified to remembering nothing more about the collision which followed. Appellant suffered a broken nose and a cut upper lip in the accident.

The first peace officer to arrive at the scene of the accident testified that appellant had blood flowing from each nostril, his speech was slurred, his eyes were bloodshot and glassy and he smelled of alcoholic beverage. This officer reconstructed the accident by testifying that appellant, while northbound, struck a white southbound Chevette (after which the driver of the Chevette abandoned his vehicle and fled the scene) and an instant later appellant struck a southbound Mazda whose driver died as a result of a crushed head. There were no skid marks to help identify the points of impact but there were scuff marks and gouges in the pavement from which impact was inferred within a claimed accuracy of one foot, and both points of impact were found to be inside the southbound traffic lanes. An independent accident investigator introduced by the defense testified that in accidents of this nature the point of impact would be difficult to prove within a four or five foot radius without more facts than he had observed from the evidence of the State. Rebuttal testimony by a State expert witness indicated the point of impact was determinable from the evidence. Appellant did not testify that he was forced into the southbound traffic lanes and there was no other evidence that he was.

The front seat passenger in the Mazda driven by the deceased testified that she saw a car coming directly at her and that the deceased said "Oh, God" just before impact. She testified on cross-examination that she knew nothing about any third car being involved in the event. An autopsy showed no intoxicating drugs or alcohol in the blood or urine of the deceased.

Another passenger in the Mazda who was seated in the back of the vehicle testified that he was injured and remembered nothing at all about the accident.

The only other eyewitness to testify was driving an automobile traveling south-bound to the rear of the victim's car and toward the appellant. He said that when he saw in the distance that appellant's headlights had entered his lane of traffic he quickly moved over to the improved right hand highway shoulder to avoid the danger. No testimony was elicited from this witness as to any other car which may have caused appellant to swerve his vehicle into the wrong lane.

A second peace officer conducted a field sobriety test at the scene of the accident and testified to the smell of alcohol upon the appellant and gave his opinion that appellant was intoxicated. The same officer later conducted a videotaped motor skills test and testified that the results were much the same as the field test. A Department of Public Safety trooper performed a sobriety test on appellant at the stationhouse and testified that in his opinion appellant was sufficiently intoxicated to have his judgment impaired. The results of an Intoxilyzer test performed by the trooper on appellant indicated an alcohol concentration of 0.12 grams per 210 liters of breath, and expert testimony was heard that this concentration is at a level which would adversely affect the alertness, judgment, night vision, depth perception and muscle coordination of most people and would render them incapable of safely driving a motor vehicle.

The videotape test was offered into evidence by the defense without objection and was published to the jury. Appellant denied in the videotape having consumed any alcoholic beverages prior to the accident. In his live testimony appellant admitted to drinking beer the night of the accident, however.

■■■ Appellant urges us to sustain his points of error one and two, contending the trial court committed reversible error by instructing the jury that an alcohol concentration of 0.10 was intoxication as a matter of law and by definition. The applicable law on involuntary manslaughter at the time of the offense read as follows:

(a) A person commits an offense if he:
  (1) recklessly causes the death of an individual; or

(2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual.

(b) For purposes or this section, *"intoxication" means that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body.* (Emphasis added).

(c) An offense under this section is a felony of the third degree.

TEX.PENAL CODE ANN. § 19.05.

It is undisputed that the offense was committed prior to September 1, 1987, the effective date of an amendment to Section 19.05 of the Penal Code substituting the definition of "intoxicated" as contained in TEX.REV.CIV.STAT.ANN. art. 6701*l*–1, Subsection (a) in place of the previous definition of "intoxication" contained in the Penal Code (and quoted above). The instruction to the jury included a paraphrase of both the old and the new definitions as follows:

The word "intoxication" as here used means that the person charged does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body.

The term "intoxicated" also means having an alcohol concentration of 0.10 or more. The phrase "alcohol concentration," as used in this charge, means the number or grams of alcohol per 210 liters of breath.

The defense voiced an appropriate and timely objection which was overruled.

The evidence of alcohol content in the blood indeed is relevant and properly admissible. However, the charge was an erroneous statement of the law in effect at the time of the offense and could be construed as a comment on the weight of the evidence. The written charge to the jury must distinctly set forth the law applicable to the case. TEX.CODE CRIM.PROC.ANN. art. 36.14. Because a jury charge is involved, we apply the principles of *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984), as clarified in *Arline v. State*, 721 S.W.2d 348 (Tex.Crim.App.1986), to determine

whether there was some harm caused by the error. Viewing relevant portions of the entire record we conclude the error was calculated to injure the rights of the appellant and that some harm was done. TEX. CODE CRIM.PROC.ANN. art. 36.19. The proper definition of involuntary manslaughter is vital to the conviction and the improper inclusion of an alternate or additional test for intoxication in the jury charge created confusion beyond reasonable doubt. Factors such as the existence of scientific evidence of a blood alcohol concentration of 0.12 and the closing argument of the prosecution focusing on intoxication *per se* only added to the problem. The jury's request for the Intoxilyzer report and its later request for clarification on whether the jury must find all three elements of intoxication, mental, physical and Breathalyzer give insight to the confusion caused. The judge's proper answer to the second jury request that all the law the jury needed was contained in its charge compounded matters even further. All of these factors merge into our finding that there is reversible error. We sustain appellant's points one and two.

■ In his third point of error appellant asserts insufficient evidence to establish guilt for involuntary manslaughter because the state failed to show the accident was a result of appellant's intoxication, seeking acquittal under *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burkholder v. State*, 660 S.W.2d 540 (Tex.Crim. App.1983); *Ortiz v. State*, 577 S.W.2d 246 (Tex.Crim.App.1979).

The standard of review for sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that appellant, while in an intoxicated condition and by reason of such intoxication, recklessly caused the death of an individual while operating a motor vehicle. *McGoldrick v. State*, 682 S.W.2d 573, 577 (Tex. Crim.App.1985). There is evidence to show that appellant was intoxicated within the

definition of the prevailing Section 19.05 of the Texas Penal Code. That is, there is some evidence that appellant did not have the normal use of his mental or physical faculties by reason of the voluntary introduction of an intoxicating substance into his body. There is evidence that the point of impact of appellant's northbound car with both the Chevette and with the Mazda driven by the deceased occurred in the southbound lanes. On the other hand, there was a videotape which could have convinced the jury of no intoxication and there was uncorroborated testimony by the appellant that another car forced him into the southbound traffic lanes. A rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offense of involuntary manslaughter and there is no other reasonable hypothesis supportable by the evidence. *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983): (1) appellant was observed to be in the improper traffic lanes; (2) appellant offered no articulable defense for his being in those improper lanes; (3) appellant was involved in two collisions in the improper lanes; (4) a death occurred as a result of the second collision; (5) the deceased made no contribution to his own death; (6) appellant had been drinking alcoholic beverages; (7) three law officers who viewed appellant after the collisions testified they believed him to be intoxicated; and (8) appellant's breath/blood alcohol content exceeded a safe level for driving. While all of the above may only circumstantially connect intoxication to the collision and the subsequent death, we believe the jury had sufficient evidence to establish a causal connection. We overrule point of error number three.

The judgment of the trial court is reversed and remanded for a new trial.