## A97A2363. SCOTT v. THE STATE.
### (496 SE2d 527)

ANDREWS, Chief Judge.

Danny Albert Scott was indicted for first degree (felony) vehicular homicide based on DUI (OCGA § 40-6-393 (a)) and for felony hit-and-run (OCGA § 40-6-270 (a) and (b)). The jury convicted him of hit-and-run but acquitted him of felony vehicular homicide and instead found him guilty of the lesser included offense of second degree (misdemeanor) vehicular homicide (OCGA § 40-6-393 (b)). Scott's appeal challenges the sufficiency of the evidence supporting his convictions. We affirm.

We apply the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979), to determine whether a

reasonable jury could have found Scott guilty beyond a reasonable doubt of these offenses. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; an appellate court determines evidence sufficiency and does not weigh the evidence or determine credibility. [Cit.] To support the verdict, circumstantial evidence must exclude only reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. [Cit.]" *Dworkin v. State*, 210 Ga. App. 461, 463 (436 SE2d 665) (1993).

Properly construed, the evidence shows that Scott, a veteran FBI agent, went to a bar just after 6:00 p.m. and left just before midnight. While there he consumed at least portions of two beers served in thirty-two-ounce cups; one ten-ounce beer; one brandy liqueur; and one "shooter" containing alcohol. He left in his government-issued car. As he drove toward his home along an area of road which witnesses described as "flat and level" and "fairly straight," he struck and killed the victim. The impact cracked his windshield. According to Scott, at that point he did not know whether he had hit someone or whether someone had thrown something at his window.

Instead of stopping or immediately calling for help on the radio or cellular phone in his car, Scott drove a mile to his home, called 911 twice between 12:06 and 12:11 a.m., and told the dispatcher to send someone to the area of the incident to check for an injured person. During the course of those calls, he said: "I was driving and I don't know if I hit somebody or what. All of a sudden, my windshield was broken, and there was somebody along the side of the road. My God, I'm really scared about what happened. . . . I'm afraid I hurt somebody. . . . Please, send somebody over there so I know I didn't do it." When the dispatcher asked if he had been drinking, Scott denied it.

A police officer who arrived at the incident scene at 12:16 a.m. found the victim, mangled and barely alive, ten feet from the road. In the roadway he found the antenna from Scott's car and the victim's pocketknife; strewn across the high grass from the roadway to the victim's body were the victim's other personal effects. Upon examining Scott's vehicle, investigators found the right front bumper, hood and right windshield frame damaged and the antenna broken, and discovered grass seeds caught in his right front bumper, spoiler and hubcap. At trial, Scott denied he veered from the roadway. An accident reconstruction expert, however, testified that based on his examination of the scene, he believed Scott's vehicle had partially veered off the roadway and had struck the victim as he walked along the shoulder of the road. A medical examiner testified the victim's injuries were caused by an impact to his skull consistent with being struck by an automobile.

An officer met Scott in front of his house shortly after midnight

and found the defendant unsteady on his feet, smelling of alcohol, with slurred speech and bloodshot eyes. Scott got into a struggle with this officer, who testified based on his experience that Scott was intoxicated to the point it was less safe for him to drive. Scott told a different officer, who found him smelling "like a brewery," that he had consumed no alcohol; however, after receiving the implied consent warnings, Scott refused to be tested.

1. The evidence supports Scott's conviction for the lesser included offense of misdemeanor vehicular homicide. First, Scott requested the charge on this lesser included offense. Therefore, the rule applies that "if the evidence supports a verdict of guilty in the more serious offense, and if there is slight evidence of the lesser included offense, a defendant who requests a charge on and is convicted of the lesser offense may not successfully urge the general grounds on appeal." *State v. Clay*, 249 Ga. 250, 251 (290 SE2d 84) (1982); accord *Watson v. State*, 206 Ga. App. 95, 96 (1) (424 SE2d 360) (1992). Here the evidence would have supported a finding that Scott committed the greater offense when he, "without malice aforethought, caus[ed] the death of another person through the violation of" the DUI laws. OCGA § 40-6-393 (a). Either while driving in the roadway or while veering off the roadway into the grass, Scott struck and killed the victim. At trial he admitted that he consumed alcohol before the collision, and officers shortly thereafter found him staggering, smelling strongly of alcohol, with bloodshot eyes and slurred speech. Moreover, he refused the breath test. See OCGA § 40-6-392 (d). These facts, along with the officer's opinion, would have allowed the jury to find him guilty of driving while under the influence of alcohol to the extent he was less safe to drive. See OCGA § 40-6-391 (a) (1); *Shults v. State*, 195 Ga. App. 525, 528 (4) (394 SE2d 573) (1990). The circumstances further allowed the jury to determine that Scott's intoxication caused him to leave the road and strike the victim *or* caused his failure to notice and avoid the victim in the roadway. See *Dobson v. State*, 222 Ga. App. 331, 332 (474 SE2d 630) (1996).

Moreover, the evidence on the lesser included offense was more than "slight" and was itself sufficient for the jury to find Scott guilty beyond a reasonable doubt. A conviction for misdemeanor vehicular homicide required a showing that Scott "caus[ed] the death of another person, without an intention to do so, by violating [certain traffic laws]." OCGA § 40-6-393 (b). One such predicate violation was charged to the jury: OCGA § 40-6-93, which states that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway. . . ." That statute "establishes that motorists on the highways must exercise ordinary care to discover and avoid persons in the roadway. . . ." *Fountain v. Thompson*, 252 Ga.

256, 257 (312 SE2d 788) (1984). Even if the victim was walking in the roadway when Scott struck him, as Scott argues, conflicting evidence regarding the weather, visibility and other conditions entitled the jury to determine Scott failed to exercise ordinary care to avoid the victim. See id.; *Dworkin*, supra at 463 (criminal negligence may be proved by circumstantial evidence).

2. The evidence was also sufficient to support the jury's finding that after this accident, "the proximate cause of [the victim's] death," Scott "knowingly fail[ed]" to "immediately stop [his] vehicle at the scene of the accident or . . . stop as close thereto as possible and forthwith return to the scene of the accident and . . . [r]ender to [the victim] reasonable assistance. . . ." OCGA § 40-6-270 (a) and (b). Although Scott argues that he was unsure whether he had hit someone and that he acted within the spirit of the law by immediately driving to his home and calling 911 for assistance, his knowledge and his intent in leaving the scene were questions for the jury. See *Dworkin*, supra; *Norwood v. State*, 136 Ga. App. 756, 759 (4) (222 SE2d 83) (1975).

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED JANUARY 26, 1998 —
RECONSIDERATION DENIED FEBRUARY 11, 1998.

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., A. Gregory Poole*, for appellant.

*Thomas J. Charron, District Attorney, Charles M. Norman, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.