# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=================
## NO. 03-00-00193-CR
=================

**Michael Francis Murphy, Appellant**

**v.**

**The State of Texas, Appellee**

=======================================================================
## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR99-182, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING
=======================================================================

Appellant Michael Francis Murphy appeals his conviction for operating a motor vehicle while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2001). After the jury found appellant guilty, the trial court assessed punishment after proof of two alleged prior convictions for operating a motor vehicle while intoxicated. The penalty assessed was four years' imprisonment. *See id.* § 49.09(b).

## Points of Error

Appellant advances four points of error. In the first two points of error, appellant complains that the trial court, over objections, erred in defining the term "normal use" in the jury charge because the instruction (1) singled out testimony and commented on the weight of the evidence, and (2) was an unnecessary and inaccurate definition, a misstatement of law, all in

violation of article 36.14 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2001). In his third and fourth points of error, appellant urges that the trial court erred in admitting evidence that prior to the arrest the police had received an anonymous report that a truck was driving erratically on the highway because (1) the testimony was hearsay, and (2) the admission of the evidence denied appellant his constitutional right of confrontation and cross-examination.

**Facts**

The State agrees with appellant's summary of the facts, which provides:

Michael Murphy is a home builder. On April 19, 1999, at about 5:00 a.m., he woke up and prepared to go to work. About 6:00 a.m., he and his step son Jason left their house and drove to his brother's property in Blanco County, where they were building him a cabin. They had been working on the cabin seven days a week for three weeks, and on April 19, they were finishing the exterior and working on the roof. Mr. Murphy and Jason worked all day, ending around 6:30 p.m. At about 7:00 p.m. Mr. Murphy and Jason went to the 306 Bar and Grill to meet Clois Cox, to discuss building a house for him in the future. Mr. Murphy and Jason stayed at the 306 until about 9:00 p.m., during which time Mr. Murphy had four 12 ounce beers. After leaving the 306, they were going home to go to bed, so they could get up the next day and go to work. Before arriving at home, they stopped off for ten or fifteen minutes to buy gas at the Circle K convenience store at FM 2673 and FM 306 in Comal County.

Shortly after 10:00 p.m., Comal County deputy sheriff Brett Smith received a call from his dispatcher that there was a white truck with boxes in the back weaving all over the road and traveling south on FM 306 from Hancock. The dispatcher did not describe the truck by make, model, license number or occupants. Ten to twelve minutes later deputy Smith spotted a white truck with several tool boxes in the back parked at the gas pump at the Circle K. Unsure whether this truck was the subject of the dispatch, Smith waited until it drove off, then followed.

2

Deputy Smith followed the truck south on 306 toward Purgatory Road for some distance, during which time it weaved within its own lane, and crossed both the white and yellow lines several times. Deputy Smith had no reason to believe the truck was speeding. After the truck crossed the yellow line the third time, Smith activated his overhead lights, and the truck pulled over onto the grass. As requested, Mr. Murphy produced his drivers' license and proof of insurance. The officer noticed disorientation and some alcohol smell, and, after determining that there were no outstanding warrants, he asked Mr. Murphy to step out and perform field sobriety tests. Based on the field sobriety tests performed -- the horizontal gaze nystagmus test, the walk and turn test, the one leg stand test, and the alphabet test -- deputy Smith concluded that Mr. Murphy was intoxicated, and he placed him under arrest for driving while intoxicated. According to the officer, Mr. Murphy offered him first $100.00 dollars, then $1,000.00, if he would just follow him home.

The officer took Mr. Murphy to the sheriff's office where he videotaped him performing the same tests he had previously administered. Mr. Murphy refused to submit to a breath test, insisting that he believed it unreliable. He did, however, repeatedly request, even insist upon a blood test. Deputy Smith testified that he tried to accommodate that request, but he could not obtain a blood vial. Smith did not, however, advise Mr. Murphy that he had a right to have someone of his own choosing administer a blood test.

Mr. Murphy was 45 years old at the time of trial. According to his brother Bill, Mr. Murphy had the body of a 70 year old from a life time of hard work. He normally walked "like an old man with arthritis." Bill testified that when he saw him that day, his brother was "[n]ormal for Mike." Mr. Murphy testified that he was tired the night he was arrested, and that his legs were hurting badly. In October 1998, he had had ear surgery. His truck had over 350,000 miles on it and had "a lot of play in the steering wheel." Mr. Murphy denied that he was intoxicated on April 19, 1999. "Just tired, sore, and worn out."

The parties stipulated that Mr. Murphy had been twice previously convicted of driving while intoxicated. The written stipulation was introduced in evidence as state's exhibit one.

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (West Supp. 2001).[1]

The essential element of "intoxicated" is defined by statute. At the time of the instant offense, the term "intoxicated" statutorily meant:

> (2)(A)  not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> (B)  having an alcohol concentration of 0.10 or more.

Act of May 29, 1993, 73d, Leg. R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3696 (former section 49.01(2)(A), (B) of the Texas Penal Code).[2] The statutory definition of "intoxicated" provides two means or modes of committing the same offense. *Kilgo v. State*, 880 S.W.2d 828, 829 (Tex. App.–Dallas 1994, pet. ref'd).

In discussing the very statute under which appellant was prosecuted, this Court in *Atkins v. State*, 990 S.W.2d 763 (Tex. App.–Austin 1999, pet. ref'd), stated:

---

[1]  The current statute is cited for convenience. It is unchanged from the 1995 amendment to the statute under which appellant was tried. Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 14.55, 1995 Tex. Gen. Laws 458, 481. This 1995 amendment deleted the words "driving or" preceding the word "operating" in subsections (a) and (c) of the former statute. The offense is no longer properly referred to as a "driving while intoxicated" offense. It is now an "operating while intoxicated" offense, but the amendment to the statute will probably not change the common reference.

[2]  The current statute is unchanged save for subsection (2)(B) in which the alcohol concentration is now "0.08 or more" instead of "0.10 or more." Tex. Penal Code Ann. § 49.01(2) (A), (B) (West Supp. 2001).

Thus, the statute provides for either an objective standard (.10 blood alcohol concentration) or a subjective standard[5] (impaired mental or physical faculties by reason of introduction of alcohol) to determine intoxication. Because Atkins refused a breath test, the State was required to prove Atkins was intoxicated according to the more subjective standard that he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol. *See id.* § 49.01(2)(A).

5. We do not use the term "subjective" here to imply any arbitrariness in the application of the § 49.01(2)(A) standard or any dependency upon the perceptions of the particular observer. Rather, "subjective" is merely used in contradistinction to the scientific verifiability, or "objectivity," of a .10 blood alcohol concentration. We recognize that both 49.01(2)(A) and (2)(B) require intoxication to be measured against a single, objective standard, either .10 or "normal use."

*Id.* at 765 & n.5.

The offense of driving or operating a motor vehicle on a public highway or in a public place while intoxicated has long been the law in Texas.[3]

---

[3] *See* Acts 1917, 35th Leg., R.S., ch. 207, § 13, 1917 Tex. Gen. Laws 474, 477 subsequently repealed by Acts 1923, 38th Leg., 2d C.S., ch. 23, 1923 Tex. Gen. Laws 56. The statute became article 802 of the 1925 Texas Penal Code and then was amended by Act of Oct. 14, 1935, 44th Leg., 1st C.S., ch. 424, 1935 Tex. Gen. Laws 1654. In 1973, article 802 was transferred to article 6701*l*-1 of the Revised Civil Statutes. Act of May 24, 1973, 63d Leg., R.S. ch. 399, 1973 Tex. Gen. Laws 883, 995-96c. Article 6701*l*-1 became sections 49.01 and 49.04 of the 1994 Texas Penal Code in 1993. Act of May 27, 1993, 73d Leg.,R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3696-97 (Tex. Penal Code Ann. §§ 49.01, .04, since amended).

In 1983, the statute (then article 6701*l*-1 of the civil statutes) was amended to include for the first time a statutory definition of "intoxicated" relating in part to the first mode of the offense, and creating a second mode of the offense by including in the definition of "intoxicated" "having an alcohol concentration of 0.10 or more."

The statutory definition of "intoxicated" now found in section 49.01(2)(A) relating to the first mode of the offense first found its way in the statutes in 1983. Its history can be tracked to the definition approved by the Court of Criminal Appeals in *Lockhart v. State*, 1 S.W.2d 894, 895 (Tex. Crim. App. 1927). *See Irion v. State*, 703 S.W.2d 362, 364 (Tex. App.–Austin 1986,

**The Instant Indictment**

The instant indictment, in alleging the primary offense, charged in pertinent part that appellant:

> on or about the 19th day of April 1999, did then and there drive and operate a motor vehicle in a public place while the said defendant was intoxicated by not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body.

It is clear that the indictment alleged only the first mode of the offense and alleged only alcohol as the basis of being "intoxicated."

**Jury Charge**

The jury charge in pertinent part provided:

## I. LAW

> Our law provides that any person who is intoxicated while driving or operating a motor vehicle in a public place, when the defendant did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into defendant's body, and who has previously been convicted two times or more of being intoxicated while operating or driving a motor vehicle in a public place shall be guilty of a felony.

---

no pet.). The Court of Criminal Appeals consistently held, until the 1983 amendment of article 6701*l*-1, that no definition of intoxication needed to be included in the court's jury charge or instructions. However, a definition phrased in the terms "lack of normal use of physical and mental faculties by reason of reason of intoxicating liquor" was regularly approved. *See Irion*, 703 S.W.2d at 364; *Waites v. State*, 401 S.W.2d 243, 246 (Tex. Crim. App 1966); *Atkinson v. State.*, 251 S.W.2d 401, 402 (Tex. Crim. App. 1952); *Cox v. State*, 150 S.W.2d 85, 86 (Tex. Crim. App. 1941).

## II.  DEFINITIONS

A person is deemed to be intoxicated within the meaning of the law when he does not have the normal use of mental or physical faculties by reason of the introduction of alcohol in his body.

A public street or public road is a public place.

The term "normal use," means a normal non-intoxicated person.  Whether or not the defendant had the normal use of his mental and physical faculties does not require proof of the defendant's normal abilities.  Rather, it means that the faculties which must be tested belong to the defendant.  You should consider if the defendant could use his faculties on the occasion in question in the manner in which the normal non-intoxicated person would be able to use his faculties.

The term "on or about" means any date prior to the presentment of the indictment within the period of limitations.

Any term not defined herein should be given its common meaning.

### Discussion

The trial court is obligated to charge the jury on the "law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2001).  This "requires that the jury be instructed concerning each element of the offense or offenses charged.  It also requires that each statutory definition that affects the meaning of an element of the offense must be given to the jury." 42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure* § 36.11, at 536 (Texas Practice 1995).

"Intoxicated" was an essential element of the offense with which appellant was charged.  This essential element is now defined in section 49.01(2)(A) of the Penal Code

unchanged from the statute under which appellant was prosecuted. Tex. Penal Code Ann. § 49.01(2)(A) (West 1994).

If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Alexander v. State*, 906 S.W.2d 107, 111 (Tex. App–Dallas 1999, no pet.); *Willis v. State*, 802 S.W.2d 337, 342 (Tex. App.–Dallas 1990, pet. ref'd). Words that are not statutorily defined are to be given their common, ordinary, or usual meaning. *Roise v. State*, 7 S.W.3d 225, 242 (Tex. App.–Austin 1999, pet. ref'd).. No specific instruction is required for these words in the jury charge. *Martinez v. State*, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996) (no definitional instruction was required for word "presence" as it had not been administratively or legislatively defined). Jurors are presumed to know and apply the common and ordinary meaning of words. *Cuevas v. State*, 742 S.W.2d 331, 346 (Tex. Crim. App. 1987). Only if the word or term does not have a common meaning that the jurors can be fairly presumed to know and apply, must a definition be supplied. *Holmes v. State*, 962 S.W.2d 663, 674 (Tex. App.–Waco 1998, pet. ref'd untimely filed).

The instant jury instruction correctly set forth the statutory definition of "intoxicated" in accordance with the indictment's allegation of the first mode of the offense of operating a motor vehicle while intoxicated. The trial court went further, however, and added a special definition of "normal use," a term that has not been administratively or legislatively defined. Moreover, the term is included within the statutory definition of "intoxicated," which related to an essential element of the offense charged.

8

Appellant objected to the jury charge because of this further definition, pointing out that it was confusing, a misstatement of the law, a comment on the weight of the evidence, and that the term was not defined in the Penal Code or the Code of Criminal Procedure and was not to be found in the form books. Later, but timely, appellant objected on the basis that the jury instruction was a violation of due process and due course of law. The trial court overruled the objections to the jury charge but advised the prosecutor that "[y]ou suggested it, you are going to have to live with it."

The State urges that the jury charge specially defining "normal use" was proper. It does not claim, however, that the term has an independent administrative or legislative definition. The whole weight of the State's argument rests upon *Atkins*, 990 S.W.2d at 763-69, the only case cited. In *Atkins*, this Court held that the "synergistic effect" jury instruction in that "DWI" case was erroneous. 990 S.W.2d at 768. The *Atkins* court then conducted a harm analysis under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g),[4] noting a timely objection to the erroneous instruction.

In a portion of its harm analysis in *Atkins*, this Court examined the entire jury charge, and in passing, noted and set out the definitions included in the charge. Sandwiched in

---

[4] Under *Almanza*, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

9

between the statutory definitions of "intoxicated"[5] and "public place"[6] was the instruction: "'*Normal use*' means the manner in which the normal non-intoxicated person would be able to use his faculties." *Atkins*, 990 S.W.2d at 769. Subsequently, in the harm analysis, this Court added: "*Taken as a whole*, the charge clearly states the proper statutory standards to be applied by the jury." *Id.* (emphasis added).

The State seizes upon *Atkins* and its foregoing statement to support the definition of "normal use" given in the instant case. *Atkins* offers a slender reed to support the entire weight of the State's contention. The statement was made in the course of a harm analysis in which a review of the charge as a whole was only a part of the analysis. The issue in *Atkins* was not the jury instruction on "normal use." The mere fact that the unobjected-to charge on "normal use" was set out in the *Atkins* opinion, along with other definitions given, does not convert that definition into an approved jury instruction.

Moreover, the definition of "normal use" set out in *Atkins* is a far cry from even the first sentence in the objected-to and questioned instruction in the instant case–[T]he term 'normal use' means a normal non-intoxicated person." "Use" does not mean "person," normal or otherwise, drunk or sober. The balance of the definition of "normal use" given in the instant case is in no way similar or supported by *Atkins*.

---

[5] Act of May 27, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3596 (Tex. Penal Code Ann. § 49.01(2)(A), since amended, unchanged).

[6] Tex. Penal Code Ann. § 1.07(a)(40) (West 1994).

Although not mentioned in the State's brief, it appears from the record that at the charge conference the prosecutor cited *Reagan v. State*, 968 S.W.2d 571, 572 (Tex. App.–Texarkana 1998, pet. ref'd), to the trial court in support of the "normal use" instruction. *Reagan*, a "DWI" case, quoted from *Massie v. State*, 744 S.W.2d 314 (Tex. App.–Dallas 1988, pet. ref'd), an opinion affirming a DWI conviction where the sufficiency of the evidence, not the jury charge, was challenged.

The *Massie* information alleged in pertinent part that the defendant drove and operated a motor vehicle "while intoxicated in that the defendant did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol into defendant's body . . . ." *Id.* 744 S.W.2d at 315-16.

In response to the sufficiency challenge, the *Massie* court wrote:

> In his second point of error appellant contends the evidence was insufficient because there is no evidence of appellant's normal use of his faculties and thus no proof that he lost his normal use of them as alleged in the information. We do not construe an allegation that appellant did not have normal use of his mental and physical faculties the same as an allegation that appellant did not have his normal use of his faculties. The former allegation does not require proof of the defendant's normal abilities. Rather, it means that the faculties which must be tested belong to appellant. If there was evidence that appellant could not use his faculties on the occasion in question, in the manner in which the normal non-intoxicated person would be able to use his faculties, the evidence is sufficient to convict him unless the jury finds that his inability to perform on that occasion is not due to intoxicants (e.g. diabetes; epilepsy).

*Id.* at 316.[7]

---

[7] Earlier in the *Massie* opinion, the court had dealt with the defendant's contention that article 6701*l*-1(a)(2)(A) of the Texas Annotated Civil Statutes, which defined intoxication, was

No authority was cited and the reasoning was the court's own. The foregoing portion of *Massie* opinion was quoted with approval in *Reagan* and *Fogle v. State*, 988 S.W.2d 891, 894 (Tex. App.–Fort Worth 1999, pet. ref'd), without more. *Reagan* and *Fogle* involved operating a motor vehicle while intoxicated convictions under sections 49.01 and 49.04 of the Penal Code then in effect. The same or similar sufficiency of the evidence contentions as in *Massie* were advanced in these cases and the State's pleadings were the same or similar to the allegations in the *Massie* information. The Court of Criminal Appeals has never addressed the issue.

The first sentence of the complained-of jury instruction was the confusing statement indicating "use means person." The second sentence stated that proof of a defendant's "normal abilities" was not required. The third sentence told the jury, however, that it was the "faculties" of a defendant which must be tested. The fourth sentence provided: "You should consider if the defendant could use his facilities on the occasion in question in the manner in which the normal non-intoxicated person would use his faculties."

Obviously, the second, third, and fourth sentences of the separate instruction on "normal use" were derived from *Massie*, *Reagan*, and *Fogle*. These cases dealing with evidentiary sufficiency are not authority for the additional and non-statutory definition of "normal

unconstitutionally vague and overbroad because it failed to precisely define the standard of "normal use of mental or physical facilities." The defendant had claimed the statute failed to state whether a person is intoxicated when his use of his faculties falls below the level of ability of the common man or below the level of ability that is normal for him. Relying upon *Watkins v. State*, 741 S.W.2d 546, 548 (Tex. App.–Dallas 1987, pet. ref'd), the *Massie* court held that the statute was not unconstitutional, vague and overbroad for failure to define "this standard." *Massie v. State* , 744 S.W.2d 314, 316 (Tex. App.–Dallas 1988, pet. ref'd).

use" given in the instant case. "Normal use" is part and parcel of the statutory definition of "intoxicated" that has been upheld by the courts and carried forward from one statute to another by the legislature within its constitutional duty to define crimes and fix penalties. Tex. Const. art. III, § 1; *McNew v. State*, 608 S.W.2d 166, 176 (Tex. Crim. App. 1980) (op. on reh'g); *State* ex *rel Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973). The term "normal use" found within the legislatively-crafted definition of "intoxicated" should be given its common and ordinary meaning within the definition. If the legislature meant otherwise, it could have so provided. Neither the trial court nor an appellate court has the power to legislate and read into the statute something omitted therefrom by the legislature as by adding words not in the statute to a jury instruction. *Barkley v. State*, 214 S.W.2d 291-92 (Tex. Crim. App. 1948) (op. on reh'g).

The trial court was beyond its power in independently and separately defining "normal use" in the instant jury instructions. Moreover, the additional definition does not stand alone as a definition of that term, but obviously refers to "mental and physical faculties." Its inclusion was an attempt to alter, change, or give a different interpretation to the statutory definition of "intoxicated," an essential element of the offense charged. The instruction, in fact, offered to the jury two different definitions of an essential element of the offense. The complained-of charge was confusing, misleading, and a misstatement of the law. It was an erroneous charge.[8]

---

[8] We do not imply that none of the matters contained in the complained-of jury instruction could not be the subject of a proper jury charge. We simply hold that it was erroneous to consolidate these matters as a definition of "normal use" under the circumstances presented.

In *Anderson v. State*, 774 S.W.2d 733 (Tex. App.–Houston [14th Dist.] 1989, no pet.), the jury charge in an involuntary manslaughter prosecution included a paraphrase of both the old and new statutory definitions of "intoxicated." It was held to constitute an erroneous statement of the law. *Id.* At 734-35. The *Anderson* court concluded that the error was calculated to injure the rights of the defendant. *Id.* at 735; *see also* Tex. Code Crim. Proc. Ann. Art. 36.19 (West 1981). In view of the timely objection to the charge, the *Anderson* court applied the principles of *Almanza*, 686 S.W.2d at 171 as clarified in *Airline v. State*, 721 S.W.2d 348 (Tex. Crim. App. 1986), and concluded some harm was caused by the error. *Anderson*, 774 S.W.2d at 735. "The proper definition of involuntary manslaughter is vital to the conviction and the improper inclusion of an alternate or additional test for intoxication in the jury charge created confusion beyond a reasonable doubt." *Id.*

### Harmless Error

Having concluded that error occurred in the instant jury charge over timely objections, we, like the *Anderson* court, apply the principles of *Almanza*, 686 S.W.2d at 171.[9] First, we examine the entire charge. Tracking the indictment, the trial court instructed the jury in part that:

> [O]ur law provides that any person who is intoxicated while driving or operating a motor vehicle in a public place, when the defendant did not have the normal use of *his* mental or physical faculties by reason of the introduction of alcohol *into defendant's body*. . . . (Emphasis added).

---

[9] *See* note four.

Thereafter, the jury instructions set forth the statutory definition of "intoxicated" and the trial court's definition of "normal use" earlier described. This was followed by the instruction that "[a]ny term not defined herein should be given its common meaning." This ensured that the jurors would give the special instruction on "normal use" the meaning assigned. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). "And, absent evidence to the contrary, we presume the jury followed the law provided by the charge." *Id.* The state of the evidence and the contested issue should be clear from what has been previously stated. In argument, appellant's counsel identified the contested issue as "intoxication." He contradicted the State's reference in argument to "full use," pointing out that the proper terminology was "normal use." Counsel then paraphrased the *statutory* definition of "intoxicated" in the charge and asked: "What's normal for Mike Murphy?" The prosecutor objected stating, "[T]hat's directly opposed to what the charge tells them." The trial court simply told the jury to read the charge and be governed thereby. Later, in closing argument, the prosecutor stated:

> The charge is quite clear. Sure this is the man that's on trial, but the definition for the term normal use is on top of page 2. Means a normal non-intoxicated person. That's the definition.

The prosecutor never mentioned the balance of the jury instruction.

The proper definition of "intoxicated" was vital to a conviction for the offense charged and the inclusion of an alternate and additional test was erroneous and created confusion. The error was emphasized by the prosecutor in jury argument compounding the error.

15

A defendant is entitled to be convicted upon a correct statement of the law. *Hutch v. State*, 922 P 166, 174 (Tex. Crim. App. 1996). When the trial court fails to correctly charge the jury on the applicable law, "the integrity of the verdict is called into doubt." *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Cases involving preserved charging error will be affirmed only if no harm has occurred. *Airline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). "Some harm" under the *Almanza* analysis means any harm. *Hutch*, 922 S.W.2d at 171. Presence of any harm, regardless of degree, which results from preserved charging error, is sufficient to require reversal of a defendant's conviction. *Porter v. State*, 921 S.W.2d 553, 558 (Tex. App.–Waco 1996, no pet.).

Applying the *Almanza* harm analysis and considering all the relevant information reflected by the record, we cannot say no harm occurred. The error was calculated to injure the rights of appellant. Tex. Code Crim. Proc. Ann. Art. 36.19 (West 1981); *Anderson*, 744 S.W.2d at 735.

Another matter of concern to our jurisprudence appears. Declaring the error here harmless would encourage the State to repeat it with impunity. *Cf. Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).[10] Prosecutors could urge upon trial courts their own home-drafted definitions of "normal use" or "intoxicated" to be used in jury instructions with or without the proper statutory definitions, arguing any error would be harmless error.

---

[10] *Harris* dealt with the harmless error rule under former Rule 81(b)(2) of the Texas Rules of Appellate Procedure rather than possible under article 36.19 and *Almanza*. Tex. Code Crim. Proc. Ann. Art. 36.19 (West 1981); *Almanza*, 686 S.W.2d at 171. However, the factor mentioned above is likewise relevant here.

We sustain appellant's second point of error.  We need not reach the other points.

The judgment is reversed and the cause is remanded to the trial court.

_____

John F. Onion, Jr., Justice

Before Justice Kidd, B. A. Smith and Onion[*]

Reversed and Remanded

Filed:   April 5, 2001

Publish

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).