George Pinkney WAITES, Appellant,

v.

The STATE of Texas, Appellee.

No. 39029.

Court of Criminal Appeals of Texas.

Jan. 26, 1966.

Rehearing Denied March 23, 1966.

Second Motion for Rehearing Denied
April 27, 1966.

Roy H. Garwood, Jr., James C. Onion,
San Antonio, for appellant.

Leon B. Douglas, State's Atty., Austin,
Earle Caddel, Uvalde, for the State.

McDONALD, Presiding Judge.

The offense is driving while intoxicated;
punishment was assessed at a fine of $50.00
and confinement in jail for three days.

The statement of facts reveals that at
about 11:30 p. m. on April 17, 1964, Patrol-
man Charles Scoggin of the Texas Depart-
ment of Public Safety observed an automo-
bile driven by appellant which appeared to
be speeding about three miles east of Uvalde
in Uvalde County, Texas. After observing

appellant for about three-fourths of a mile, during which time he drove from one side of the road to the other about three times, the patrolman stopped appellant.

Patrolman Scoggin testified that appellant was unsteady on his feet; that he smelled of alcoholic beverages; and that based on the manner in which he drove his car, the manner in which he stood, and the manner in which he walked, he (Patrolman Scoggin) was of the opinion that appellant was under the influence of alcohol.

The testimony of Deputy Sheriff J. P. English revealed that he saw appellant when he was brought to the county jail in Uvalde approximately 20 minutes later, and that appellant's legs were wobbly, his speech was slurred, his breath smelled of alcoholic beverages, and that in his opinion appellant was drunk.

Appellant's wife testified that she and her husband were traveling from Alpine to San Antonio; that appellant had been drinking beer but was not intoxicated; that she observed nothing unusual about the manner in which appellant walked and talked at the time he was arrested, or in the manner in which he was driving, just prior to his arrest.

Appellant testified that he left Alpine around 3:30 p. m.; that he stopped in Comstock where he ate and had two beers; that he had one other beer at Brackettville; and that these three beers were all he had to drink that day; and that he was not intoxicated.

The cafe operator at Comstock testified that appellant was not intoxicated when he saw him, and other witnesses testified that appellant had a good reputation as a peaceable, law-abiding citizen.

■ The fact issue was resolved against appellant, and we find the evidence sufficient to sustain the conviction.

It is appellant's contention that the court accepted an illegal verdict. The facts, as certified by the trial court in appellant's Formal Bill of Exception Number One, which was not accepted by appellant, reveal the following:

■ After deliberating for approximately one hour and fifteen minutes, the jury returned to the courtroom and reported that they were unable to reach a verdict. The court stated that he had no desire to hold them if this were true, but asked them as a body if they felt they could reach a verdict with further deliberation. Several of the jurors expressed the opinion that further deliberation might prove fruitful, and the court instructed the jury to return to the jury room and deliberate further. Approximately 20 minutes later the jury returned to the courtroom and informed the court that a verdict had been reached, but that the verdict had not been signed. Quoting from the formal bill of exception, the following then transpired:

"Whereupon the Court asked him if they had reached a verdict and the foreman said, 'Yes, we have, we have decided to give the Defendant a minimum sentence of a fifty dollar fine and three days in jail,' but asked the Court to suspend the jail time. Whereupon the Court advised him that he could not suspend the jail term and that he would have to declare a mistrial. The foreman then stated that they had actually reached the verdict of fifty dollar fine and three days in jail and only wanted to ask the Court to suspend the jail sentence and if he could not do so, they still wanted their verdict to stand, Whereupon the Court polled the jury and asked them if this was actually their verdict and they all said it was, Whereupon the Court instructed the foreman that it would be necessary that he fill out and sign their verdict, but due to the fact that it would be necessary for the jury to climb the stairs to the third floor to the jury room the Court instructed him that he could do so while the jury was in the jury box. Whereupon the

foreman stated that he was so nervous he could not fill out the verdict and turned to the County Clerk who was standing in front of him and asked the Clerk to fill out the verdict showing fifty dollar fine and three days in jail, which the Clerk did. After which the foreman signed the verdict in open court. Whereupon the Judge again polled the jury asking them if this was their actual verdict and they all stated that it was. Whereupon the verdict was received by the Court and the jury discharged."

We overrule appellant's contention that the action of the trial court amounted to direction of the verdict. From the facts set out above, it appears that the able trial judge was careful to afford appellant every consideration throughout jury deliberations and acceptance of the verdict, and that the verdict he accepted represented the untrammeled conclusion of each member of the jury. The procedure followed by the trial court is in accordance with the provisions of Article 696, Vernon's Ann.C.C.P., then in effect, and we fail to see that appellant was denied any substantial right. We note also that the formal bill of exception fails to show that appellant made any objection or registered any sign of disfavor with these proceedings. Shaver v. State, 155 Tex.Cr.R. 395, 234 S.W.2d 863.

■ The trial court refused to include in his charge an instruction that a person convicted of driving while intoxicated would automatically lose his driver's license for a period of six months. Appellant's contention that such refusal constituted reversible error was overruled by this Court in Harward v. State, Tex.Cr.App., 398 S.W.2d 127, handed down on January 19, 1966, and in cases cited therein. This cause was tried November 4, 1964. The amendment to Art. 6687b, Vernon's Ann.Rev.Civ.St., referred to by appellant was not effective until August 30, 1965.

Over appellant's objection, Patrolman Scoggin testified that enroute to the jail about 10 minutes after appellant was stopped, and "about a half mile away between where I stopped Mr. Waites and Uvalde", the following words were exchanged between the officer and appellant:

"Mr. Waites said, 'If you want to get tough about this, we will,' and I asked Mr. Waites, I said, 'Are you threatening me, Mr. Waites?' He said, 'No, if you want to get tough about it, we will. If you want to settle this, we will.'"

■ This testimony was objected to by appellant on the grounds that it was inadmissible under Article 727, Vernon's Ann. C.C.P., and further that it was not admissible as part of the res gestae. We first observe that the statements of appellant do not appear to be in the nature of a confession. We further note that the trial court was careful to exclude statements made after appellant arrived at the jail about 20 minutes after his arrest which the judge felt were not admissible as part of the res gestae. The statements of appellant were made shortly after he was placed in the patrol car in close proximity to the time and place of his arrest, and appear to have been spontaneously made incident to that arrest and while appellant was still excited from the events which had transpired at the scene of his arrest. We do not think the trial judge erred in admitting these statements into evidence. See Fowler v. State, Tex.Cr.App., 379 S.W.2d 345. The statement found inadmissible in Lindsey v. State, 172 Tex.Cr.R. 101, 353 S.W.2d 444, cited in appellant's brief, is distinguishable from the statement made by appellant in the present case. In Lindsey the statement manifested a cool mind and studied reflection by the speaker, whereas the statement here appears to have been made on impulse. The other cases cited by appellant can be distinguished on their facts.

We have considered each of the remaining informal bills of exception and are convinced that appellant has presented no reversible error.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Commissioner.

■ Complaint is again made of the following definition given in the charge to the jury:

"By the term 'under the influence of intoxicating Liquor' is meant that a person has taken into his stomach a sufficient quantity of intoxicating liquor to deprive him of the normal control of his bodily or mental faculties."

Appellant insists that reversible error is shown because the portion of the definition which reads "to deprive him of the normal control of his bodily *or* mental faculties," should have been given in the conjunctive instead of the disjunctive. We do not agree.

It is re-urged that the trial court should have charged the jury that a person convicted of driving while intoxicated would automatically lose his driver's license for a certain period of time.

This offense was alleged to have been committed on April 17, 1964, and the trial was had November 4, 1964. The punishment authorized for driving while intoxicated at said time is controlled by Art. 802, Vernon's Ann.A.P.C. which was in effect at the time of the commission of the alleged offense. Kirk v. State, Tex.Cr.App., 401 S.W.2d 596, dated March 9, 1966. No error is presented.

The other contentions re-urged have been considered and they present no reversible error.

The motion is overruled.

Opinion approved by the court.