# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00489-CR

**Alfredo Hernandez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2002-027, HONORABLE CHARLES R. RAMSEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Alfredo Hernandez was convicted of felony driving while intoxicated ("DWI") and sentenced to ten years' imprisonment. *See* Tex. Pen. Code Ann. §§ 49.04, .09 (West 2003). He appeals, contending that the trial court erred (1) in refusing a requested jury instruction, (2) in sustaining one of the State's objections and directing the jury to disregard certain testimony, and (3) in excluding certain other testimony. We will affirm.

## Background

Seventeen-year-old Erik Johnson testified that on October 14, 2001, between 1:00 and 1:30 a.m., he was driving on Interstate Highway 35 when he observed a pickup truck weaving across the lanes, straddling the middle lane, and at times driving as slow as thirty-five miles per hour in a fifty-five mile per hour zone. He called the New Braunfels Police Department on his cell phone

to report the erratic driving, giving the 911 operator the truck's license plate number and his own contact information and opining that "[t]he guy is drunk." The truck left the highway, and Johnson followed with his hazard lights flashing, continuing to describe the truck's path to the operator. Once Johnson saw a police car arrive, he stopped following the truck and continued on his way to a friend's house.

Santiago Castillo, who was a New Braunfels Police Officer in October 2001, testified that in the early morning of October 14, he heard the police dispatcher relay Johnson's report to the district officer. Castillo was in the area, so he pulled into a parking lot to wait for the truck. About five minutes later, Castillo saw a vehicle with flashing lights, then saw a pickup truck with the reported license plate number driving slowly through the parking lot. After Castillo pulled over the truck, he approached and smelled alcohol on the driver, who was identified at trial as appellant, and saw an open can of beer. Castillo testified that appellant swayed and leaned on the truck, could not keep his balance, and had bloodshot and watery eyes. Castillo asked appellant in Spanish if he had been drinking, and appellant indicated that he had been. Castillo then called for a certified Intoxilyzer officer, and New Braunfels Police Officer Christopher Snyder responded to the scene. Snyder conducted field sobriety tests and concluded that appellant was intoxicated. Snyder transported appellant to the Comal County Jail, where appellant was videotaped being given more sobriety tests and being interviewed by Snyder.

## Discussion

In his first issue on appeal, appellant contends that the trial court should have given the jury an instruction related to the voluntariness of the statement he gave to New Braunfels Police

Officer Snyder at the police station after his arrest.  He contends that the evidence raised a question as to whether he fully understood his statutory warnings as administered by Officer Snyder.

After appellant was brought to the police station, Snyder was unable to find a Spanish translation of the statutory rights that are read to all arrested persons, so he read an English-written form to appellant, translating it into Spanish; Snyder worked in Laredo for five years before coming to New Braunfels and considers himself to be fluent in Spanish.  Snyder's interview with appellant and appellant's performance of field sobriety tests at the jail were videotaped and that videotape was admitted into evidence.  The videotape shows appellant attempting to perform several sobriety tests, including reciting the alphabet in Spanish, walking heel to toe in a straight line, and holding up one foot for thirty seconds, all of which appellant was unable to do; it appears that appellant was able to perform the "finger-to-nose" test.  The tape also shows appellant swaying slightly as he stood and shows Snyder reading appellant his rights and asking him some questions about the events leading up to his arrest.  Snyder said that he spoke to appellant in "Tex-Mex," which he learned informally; he did not ask for help from other officers who might have been more fluent in Spanish.  Snyder said that although there were "one or two instances where I didn't have an exact translation of the word and so I came across in English trying to see if we could come to a common understanding," appellant indicated that he understood the rights as Snyder explained them.  Snyder admitted that his translations may not have been "100 percent correct," and said, "I did my best after each one to ask if he understood them."  At trial, the State in its direct examination of Snyder essentially walked Snyder through the videotape, asking him to translate his questions and appellant's answers.  Snyder asked appellant if he had been drinking, and Snyder said appellant replied he had not.  Snyder then

3

asked appellant what he had been drinking and how much, and appellant said he had drunk one beer at about 6:30 p.m. Appellant also responded in the negative to Snyder's questions about whether he was sick or had any disabilities and talked to Snyder about when he had last slept and eaten and where he was headed before his arrest. Outside the jury's presence, three hours after the State played the videotape of appellant's interview with Snyder and after the State rested its case, appellant's attorney stated, "We've reviewed the tape. We have a little translation difficulty here and . . . it would seem that . . . right after, 'You have the right to remain silent and not say anything,' he then, the officer, says, 'but you can also talk to us.'" Appellant sought to have his statements made to Snyder suppressed, and the trial court overruled appellant's motion. At the charge conference, the trial court refused appellant's requested jury instruction concerning whether his statutory warnings were properly administered and whether his statements made after those warnings were admissible.

The code of criminal procedure provides that when the evidence raises an issue as to the voluntariness of a statement, "the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement." Tex. Code Crim. Proc. Ann. art. 38.22, § 7 (West 1979). Evidence obtained in violation of a provision of a defendant's constitutional rights or federal or Texas law shall not be admitted in a criminal trial and, if the evidence raises such an issue, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained [by such violations], then and in such event, the jury shall disregard any such evidence so obtained." *Id*. art 38.23(a) (West Supp. 2003).

Appellant requested that the charge include the following instruction:

Now bearing in mind these instructions, if you find from the evidence that, on occasion in question during any custodial interrogation or questioning, Jose Alfredo Hernandez was not read his [statutory warnings] properly by the police, or if you have a reasonable doubt thereof, you will disregard any and all oral statements obtained after defendant's arrest by the arresting officer, and you will not consider such evidence for any purpose whatsoever.

The trial court overruled appellant's request. The jury charge in this case instructed the jury that "no evidence obtained or derived . . . as a result of an unlawful stop and detention shall be admissible in evidence," and went on to explain when an officer may make a temporary investigative detention and to define reasonable suspicion. This portion of the charge concluded by instructing the jury that it was to disregard the testimony of Castillo and Snyder unless it found beyond a reasonable doubt that Castillo was justified in making the initial stop. The charge did not contain any instructions related to the admissibility of and the jury's consideration of appellant's statements made after Snyder attempted to translate appellant's statutory rights to Spanish.

If evidence from any source, even if weak, contradicted, or unbelievable, raises an issue as to the voluntariness of a defendant's statement, and if the defendant requests a jury charge or instruction on that issue, the trial court *must* submit the issue to the jury. *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002); *Dinkins v. State*, 894 S.W.2d 330, 353 (Tex. Crim. App. 1995). A defendant entitled to such an instruction is only entitled to a general instruction on voluntariness, not to an instruction that recites specific facts or calls attention to a specific piece of information. *See Mendoza*, 88 S.W.3d at 240. If a trial court erroneously refuses a requested defensive instruction or charge raised by the evidence, we then review the entire record to determine

5

whether the defendant suffered some actual harm; theoretical harm is not sufficient to constitute reversible error. *Arline v. State*, 721 S.W.2d 348, 351-52 (Tex. Crim. App. 1986). If the defendant has suffered any harm, regardless of degree, we will reverse the conviction and remand the cause to the trial court. *Murphy v. State*, 44 S.W.3d 656, 665-66 (Tex. App.—Austin 2001, no pet.).

The record contains evidence that Snyder may have included in appellant's statutory warnings a statement that, although appellant's statement could be used against him, he "can also talk to us." The record also indicates that, although Snyder did his best to accurately translate the warnings into Spanish, he was speaking "Tex-Mex," learned informally, and was not completely accurate in his translation. Appellant testified through an interpreter and stated that he understood English but could not speak it. He also said he could read "a little bit" of English, but not "complex legal forms." Appellant testified that he could read some but not all of the statutory warning form used by Snyder. He further testified that he "didn't understand a lot of" Snyder's translations. This raises the issue of whether appellant's statement was given with full knowledge of his statutory rights. *See Dinkins*, 894 S.W.2d at 348, 352-53 (warning that statement could be used "for or against" defendant is improper; testimony that officer might have so instructed defendant entitled defendant to general instruction on voluntariness of statement). We hold that, on the record before us, appellant was entitled to a jury instruction as to the voluntariness of his statement.[1] Although

---

[1] In a footnote, the State asserts that the holding in *Mendoza v. State* indicates that an instruction such as the one appellant requested is fact-bound and therefore not an appropriate jury instruction. 88 S.W.3d 236, 239-40 (Tex. Crim. App. 2002). Although the *Mendoza* court does state that an instruction similar to the one requested by appellant is overly fact-bound, the court notes that the voluntariness issue was adequately addressed by another instruction that was included in the jury charge. *Id*. at 240. We do not believe that *Mendoza* supports the conclusion that because appellant's requested instruction was overly fact-bound he was not entitled to any instruction on voluntariness.

6

appellant's requested instruction was arguably too fact-specific to be a proper instruction, the trial court erred in refusing to include such a general instruction on the issue. We must therefore examine the record to determine whether appellant suffered any harm as a result of the error. *See Arline*, 721 S.W.2d at 351-52; *Murphy*, 44 S.W.3d at 665-66.

Appellant testified about his driving on the night in question. He denied weaving, driving in the middle of two lanes, or driving thirty-five miles per hour on the highway. Appellant admitted that when he was stopped he had an open can of beer with him and that he told the officer who stopped him that he had been drinking that night. Appellant admitted that he failed two field sobriety tests the police asked him to perform. Appellant testified that he had "[a]bout 12, 11" beers in a five-hour period on the night he was stopped, but said that was not "a lot for [him] to drink." Appellant said on past occasions he had consumed twelve to fifteen beers, and that twenty-four beers would be "drinking a lot." He said he becomes intoxicated when he drinks between fifteen and eighteen beers. Appellant testified, "[Castillo] asked me if I had been drinking and I told him yes. . . . He asked me if I had—if I could still drive and I told him yes, I'm drunk, but I can still drive."

The record includes appellant's testimony that he had consumed about a dozen beers on the night in question, Snyder's and Castillo's testimony that he failed various sobriety tests, smelled of alcohol, slurred his words, swayed and leaned when he tried to stand, and generally appeared to be intoxicated, a third officer's testimony that appellant appeared to be intoxicated, and the videotape of appellant at the police station, in which he failed several sobriety tests.[2] In light of

---

[2] A videotape of a suspect attempting to perform field sobriety tests generally is not testimonial in nature and does not implicate the suspect's statutory rights. *See Gassaway v. State*, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997); *Jones v. State*, 795 S.W.2d 171, 175-76 (Tex. Crim.

7

the entire record, we hold that the trial court's error in refusing to include a general instruction as to the admissibility of a statement did not cause appellant any harm and therefore does not constitute reversible error. We overrule appellant's first issue on appeal.

In his second and third issues on appeal, appellant contends that the trial court erred in excluding testimony regarding the veracity of Officer Castillo, the officer who stopped appellant.

Outside the jury's presence, Chief of Police Russell Johnson testified that he became Chief about a month before trial and had known Castillo for about ten days. He terminated Castillo's employment with the police department after an investigation into Castillo's submission of false vouchers for overtime pay. Asked about Johnson's opinion of Castillo's truthfulness, Johnson answered, "On this incident [the investigation into the fraud and theft allegations], he was truthful when asked about it. Anything prior to that, I couldn't tell you if he was truthful or he wasn't truthful." He said, "Concerning this incident, I would consider him not being truthful"; Johnson also said that Castillo had never lied during the investigation, but had admitted to the false pay vouchers. The State objected that Johnson did not have a sufficient basis to have an opinion as to Castillo's reputation for truthfulness, and the trial court sustained the objection.

Officer Doug Dunlap, the Assistant Chief of Police in New Braunfels, testified that he had known Castillo for more than twenty years. Appellant attempted to ask Dunlap what his opinion was as to Castillo's reputation for truthfulness as of the date of trial. The State objected, and

---

App. 1990). Therefore, the only portion of the videotape that could potentially be excluded was the portion in which Snyder interviewed appellant after attempting to read him his rights. The only answers that might be potentially incriminating were those related to whether appellant had been drinking and in which appellant stated he had consumed one beer the night before.

the trial court limited appellant to inquiring as to Dunlap's opinion as of the date of the offense. Dunlap then testified that up until October 2001, he always believed Castillo was truthful. Dunlap then testified that his opinion had changed since then "in certain regards." The State objected, and the trial court instructed the jury to disregard that answer.

Appellant contends that the trial court erred in limiting Dunlap's opinion testimony to the date of appellant's arrest and in instructing the jury to disregard his answer that his opinion had changed "[i]n certain regards." Appellant further contends that the trial court erred in refusing to allow Johnson to testify as to his opinion of Castillo's truthfulness.

We review a trial court's decision to exclude testimony for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *Patton v. State*, 25 S.W.3d 387, 394 (Tex. App.—Austin 2000, pet. ref'd). We will not reverse a trial court's exclusion of testimony unless that decision falls outside the zone of reasonable disagreement. *Green*, 934 S.W.2d at 102; *Patton*, 25 S.W.3d at 394.

Any party may attack a witness's credibility. Tex. R. Evid. 607. A witness's credibility may be attacked by way of opinion or reputation evidence, but such evidence "may refer only to character for truthfulness or untruthfulness." *Id*. R. 608(a). Unless a witness has been convicted of a felony or a crime of moral turpitude, a witness's specific acts may not be used to attack the witness's credibility through cross-examination or extrinsic evidence. *Id*. R. 608(b); 609(a); *see Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd). A witness's credibility may be attacked by testimony about a witness's reputation for veracity or opinion testimony. Tex. R. Evid. 405(a).

9

Johnson testified that he became Chief of Police only about one month before trial. He did not testify as to any other experience he had with the New Braunfels Police Department or Castillo. He stated he had known Castillo for about ten days and had only spoken to him a few times during the investigation. We cannot hold that the trial court erred in refusing to allow Johnson's testimony about Castillo, whom he had known for less than one month. *See Garza v. State*, 18 S.W.3d 813, 824 (Tex. App.—Fort Worth 2000, pet. ref'd).

Appellant complains that the trial court wrongly limited Dunlap's testimony to what his opinion was as to Castillo's truthfulness as of the date Castillo stopped appellant and wrongly excluded Dunlap's statement that his opinion of Castillo's veracity had changed. However, appellant did not seek to have Dunlap's testimony included in the record outside of the jury's presence, nor does a review of the record indicate that appellant was barred from being allowed to establish Dunlap's qualification to testify as to Castillo's reputation. We do not believe that on this record appellant has shown that the trial court clearly abused its discretion in limiting Dunlap's testimony as his opinion of Castillo's truthfulness.

Even if we assume the trial court erred in refusing to allow Johnson's and in limiting Dunlap's testimony, appellant has not shown that such errors had "a substantial and injurious effect or influence" on the verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Appellant contends that if Dunlap and Johnson had been able to give their full testimony, the jury might have had doubts about Castillo's testimony and thus might have "been compelled to disregard all evidence following the traffic stop." However, Castillo testified that the only reason he stopped appellant was the information he received from Erik Johnson via the police

dispatcher. He did not testify that he stopped appellant after observing any kind of traffic violation. Appellant moved to suppress all evidence arising from the stop, arguing that the stop was illegal because it was based solely on information provided by an informant, not on Castillo's observation of some kind of offense or suspicious behavior. The trial court overruled appellant's motion and appellant does not complain on appeal of the trial court's refusal to suppress the evidence arising from the traffic stop. Castillo's testimony that appellant smelled of alcohol and behaved as if he was intoxicated was reiterated by the other officers who testified. The only testimony that was not confirmed by other evidence was Castillo's testimony that he stopped appellant based on the police dispatcher's information alone. We fail to see how allowing extensive attacks on the veracity of such testimony would have benefitted appellant.

Had there been testimony that Castillo himself saw appellant driving erratically or breaking the traffic rules, an attack on such testimony might have benefitted appellant. However, in this case, Erik Johnson testified that he called the police to report erratic driving, providing a description of the truck and its location and the number of the license plate. An audiotape of that call was played for the jury. Appellant does not contest that the license plate number provided was his licence plate. Two other officers testified that appellant appeared to be intoxicated, and appellant himself testified that he had consumed about a dozen beers on the evening he was stopped. Allowing testimony to attack Castillo's truthfulness related to his decision to stop appellant, which was admittedly made solely on the information provided by Erik Johnson and broadcast by the police dispatcher, would not have aided appellant. Appellant's substantial rights were not harmed by any error that may have occurred when the trial court limited and excluded Dunlap's and Johnson's

11

testimony as to Castillo's reputation for veracity. We overrule appellant's second and third issues on appeal.

Having overruled appellant's issues, we affirm the trial court's judgment of conviction.

 

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   September 25, 2003

Do Not Publish