Reversed and Remanded and Opinion filed November 24, 2004









Reversed
and Remanded and Opinion filed November 24, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00940-CR

____________

 

TAMARA ANN HEINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 895,430

 



 

O P I N I O N

Appellant Tamara Heins brings this appeal
from her conviction for the murder of her husband, John Heins, for which the
jury sentenced her to eight years in prison. 
Appellant presents three issues for our review: whether the trial court
erred in its statement of the law in the jury charge regarding the lawful
carrying of handguns; whether the trial court erred in overruling appellant’s
objection to the testimony of an assistant prosecutor; and whether appellant
received ineffective assistance of counsel. 
We reverse and remand for a new trial.

 








Background

Appellant and the decedent, John Heins,
met in 1993 and married in 1995.  The
marriage was not a stable one; testimony offered at trial showed that the
decedent, HIV-positive and an habitual steroid user, abused appellant, her son,
and the family pets, one of which he beat to death.  Appellant suffered chronic back pain from
being hit by a drunk driver when she was twenty years old.  The abuse she received from the decedent
further exacerbated the injuries, necessitating multiple surgeries on her back
and neck.

The couple separated a number of times,
but would reconcile after the decedent promised to seek treatment.  Appellant bought a home in 1999 during one of
the couple’s separations; they later reconciled, and the decedent moved in with
appellant and her son.  Appellant filed
for divorce in January of 2001, but the couple continued to live together.  In late 2001, after another incident of abuse
by the decedent, appellant left the state with her son for a one-month
vacation.  The couple had originally intended
the month to be time spent apart in hopes of improving the marriage; however,
after being attacked by the decedent, appellant made the decision the marriage
would come to an end once and for all upon her return.  She and the decedent agreed that he would
live in the home until her scheduled return at the end of November since he had
paid the November mortgage payment on the house.[1]









Appellant and her son returned from out of
state early; however, pursuant to her arrangement with the decedent, she
allowed him to stay in the house while she stayed with her mother and drove her
son to school 35 miles away.  On December
1, 2001, appellant called the decedent to ask him to leave the house in
accordance with their agreement; he refused, telling her that she could return
home but that he would not leave. 
Appellant had her father call as well, but to no avail.  Appellant, in pain (due to her chronic back
and neck problems) and exhausted from driving over 140 miles to and from her
son’s school each day, decided that the only way to resolve the conflict would
be in person.  She drove to her house,
hoping that once the decedent saw how upset and in pain she was, he would back
down and leave as he had in the past.  

When appellant arrived at the house, she
saw the decedent’s car and truck in the driveway and became apprehensive.  Fearing the decedent’s possible aggressive
behavior and remembering that he had pulled a gun on her several times in the
past, she placed her .38 caliber gun in her purse and entered the house.

Appellant found the downstairs empty;
however, the decedent soon came downstairs and a confrontation ensued.  The decedent told appellant that he wouldn’t
leave.  When she told him she needed to
return home to sleep in her bed in preparation for back injections, he
allegedly told her, “it doesn’t matter where you want to sleep because I’m
going to break you in half.”  He then
threw his glasses on the floor in a clear act of aggression and crouched as if
he were about to tackle her.  Appellant
backed up and drew her gun.  When she
did, the decedent said, “go ahead, do it,” and lunged forward.  Appellant fired a single shot, striking the
decedent in his upper chest.  The
decedent died a short time later.

Analysis

In appellant’s first point of error, she
claims that she was harmed when the trial court incorrectly instructed the jury
on the exemptions to unlawfully carrying a handgun.  Although appellant’s attorney did not object
to this incorrect charge, appellant claims the trial court committed egregious
error under the Almanza standard. 
We agree.

Defendants are entitled to be convicted on
correct statements of the law.  Murphy
v. State, 44 S.W.3d 656, 665 (Tex. App.—Austin 2001, no pet.).  The integrity of the verdict is called into
doubt if a trial court fails to correctly charge the jury on the applicable
law.  Id. (citing Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)).  








The manner in which appellate courts
analyze jury charge error is prescribed in article 36.19 of the Code of
Criminal Procedure.  Arline v. State,
721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (citing Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985)). 
We must first determine whether error exists in the charge.  Almanza, 686 S.W.2d at 171.  We must then determine whether the error, if
any, caused harm sufficient to require reversal.  Id. 
If charging error was not preserved at the trial court level, a greater
degree of harm, egregious error, is required. 
Id.  Errors that meet this
standard are of the type which go to the very basis of the case, deprive the
defendant of a valuable right, or vitally affect the defense.  Id. at 172.  The following factors should be considered
when measuring the actual degree of harm: the entire charge; the state of the
evidence, including contested issues and the weight of probative evidence; the
arguments of counsel; and any other relevant information the record, as a
whole, reveals.  Id.  

In the guilt/innocence phase, the jury was
instructed on the laws regarding murder and self-defense.  The court also instructed the jury that the
use of force in self-defense would not be justified “if the defendant sought an
explanation from or discussion with the victim concerning the defendant’s
difference with the victim while the defendant was unlawfully carrying a
weapon.”  As to the law regarding
unlawfully carrying a weapon, the jury was instructed as follows: 

Our law provides that it is
unlawful for a person to intentionally or knowingly carry a handgun on or about
her person.  

It is not an offense for a person
to carry a handgun;. . .

3. is on the
person’s own premises under the person’s control.

(emphasis added).  This is an incorrect statement of the
law.  Under the Texas Penal Code section
46.15(b)(2), the third exemption to unlawfully carrying a handgun as stated in
the charge should have read “is on the person’s own premises or premises
under the person’s control” (emphasis added). 
By omitting the italicized words, the court committed error.  Appellant was entitled to be convicted on a
correct statement of the law; since the trial court failed to correctly charge
the jury on the applicable law, the integrity of the verdict is thus called
into doubt.  Murphy, 44 S.W.3d at
665.








Appellant’s
counsel did not object to the erroneous jury charge.  Using the factors listed in Almanza,
we must therefore determine whether the error committed by the trial court is
an egregious one, that is, whether appellant had a fair and impartial
trial.  Considering the charge itself,
the evidence, the arguments of counsel, and other relevant information, we
believe egregious error was committed.

Appellant claimed
that she shot the decedent in self-defense when he told her he would “break her
in half,” threw off his glasses, and lunged at her.  Under Texas law, the use of force is
justified when the actor reasonably believes that force is immediately
necessary to protect herself against an aggressor’s use (or attempted use) of
unlawful force.  Tex. Pen. Code Ann. § 9.31 (Vernon 2003). The use of force is
not justified, however, if the actor, while unlawfully carrying a handgun,
“sought an explanation from or discussion with the other person concerning the
actor’s differences with the other person.” 
Id.  One of the exemptions
to the handgun rule, however, is that the law is not violated if the person is
on her own premises or premises under her control.  Tex.
Pen. Code Ann. § 46.15(b)(2) (Vernon 2003).  The State based its case largely on the fact
that, since appellant had not lived in her house for a month and had not paid
that month’s mortgage payment, the premises were not “under her control.”  The State argued that because the premises
were not under appellant’s control, she was not eligible for the handgun
exemption or, by extension, the self-defense affirmative defense.  

The problem arises
with the omission of the two words ‘or premises.’  By omitting the two words and thus giving the
jury an incorrect statement of the law, the charge as issued required that
appellant both own the premises and have them under her control.  Whether the premises were under her control
is arguable; whether she owned them is not. 
She bought the house in 1999, making the down payment and all but one of
the mortgage payments.[2]  Had a proper charge been given, a jury could
have determined that appellant qualified for the third exemption to the law
against unlawfully carrying a handgun. 








We believe that
the omission of these words constituted egregious error by both going to the
basis of the case and vitally affecting appellant’s defensive theory.  Almanza, 686 S.W.2d at 172.  During deliberations, the jury asked several
questions, including one which requested the definition of “‘control of
residence’ as it applies.”  The court responded
that “control” was an issue for the jury to decide.  Another question requested the Texas statute
on carrying a handgun, in response to which the judge referred the jury to the
charge.  It is evident from these
requests that the jury was struggling over the issue of whether the premises
were under appellant’s control and whether she would therefore be eligible to
claim self-defense.[3]  Thus, both the basis of the case and the main
defensive theory, that is, whether appellant murdered her husband or shot him
in self-defense, were affected by this error. 
Her first point of error is therefore sustained.

In light of our
disposition of appellant’s first point of error, it is unnecessary for us to
examine the remaining points of error. 
We reverse the judgment of the trial court and remand the case for
further proceedings consistent with this opinion.

 

 

 

 

 

/s/      Adele Hedges

Chief
Justice

 

 

 

 

Judgment rendered and Opinion filed November 24, 2004.

Panel consists of Chief Justice Hedges and Justices Hudson
and Seymore.

Publish — Tex. R.
App. P. 47.2(b).

 











[1]  Appellant had made the down payment
and all other mortgage payments on the house.





[2]  The deed to
the house was not entered into evidence.





[3]  Appellant’s
first trial ended in a mistrial as a result of a hung jury.  Aside from several typographical vagaries,
the charges were identical.