COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.  2-04-308-CR

2-04-309-CR

 

 

KIMBERLY DENISE LEWIS MCILROY                                       APPELLANT

A/K/A KIMBERLY DENSIE
LEWIS

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 372ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                               -----------

I.  Introduction








The primary issue we address in this appeal is
whether the State may read to the juryCover the
defendant=s objectionCthe type
of prior felony offense the defendant committed when it is alleged in an
indictment for possession of a firearm by a felon and when the defendant has
agreed to stipulate to the prior felony and to her status as a felon.  We hold that when a defendant charged with
possession of a firearm by a felon stipulates to her status as a felon and to
the prior felony offense and when she objects to the reading of the portion of
the indictment describing the type of prior felony offense committed, it is
error to permit the State to read those facts to the jury as they have no
probative value and can serve only to prove the defendant=s bad
character or to provide a prejudicial conformity inference.  Although the trial court here erred by
permitting the State to read to the jury the portion of the indictment
describing the type of prior felony offense Appellant Kimberly Denise McIlroy
committed, because we cannot conclude that this error affected her substantial
rights, we will affirm the trial court=s
judgment.

II.  Factual and Procedural Background








Sergeant Glen Verrett noticed a van parked in the
street more than eighteen inches from the curb, a violation of state law.  He stopped because there were no houses or
businesses in the area and because the van was stopped in the road without
headlights or hazard lights on.  Sergeant
Verrett approached the vehicle and found McIlroy unconscious and slumped over
in the driver=s seat.  The driver=s side
door was locked, and McIlroy did not respond when the sergeant tapped on the
window.  Sergeant Verrett found the
passenger side door unlocked, and he opened the door, turned off the ignition,
and removed the keys.  He noticed McIlroy=s hand
resting inside a clear plastic bag on the seat between her legs, and he removed
the bag because he could see a metal object inside it.  Sergeant Verrett exited the van and used the
keys to unlock the driver=s side door.  He saw a Agreen,
military-style holster@ between the driver=s side
door and the seat, but he did not see a gun in plain view.  He also smelled a strong odor of alcohol
coming from McIlroy and saw an open beer can in the front console.  

Sergeant Verrett attempted to wake McIlroy, and
after a few minutes, McIlroy woke up enough to climb out of the van.  Officer David DeLeon arrived on the scene and
observed that McIlroy was unsteady, swaying, and slurring her speech and that
she smelled of alcohol.  Officer DeLeon
arrested McIlroy for public intoxication. 
Sergeant Verrett then looked inside the clear plastic bag he had removed
from McIlroy=s lap and found a loaded
magazine for a semi-automatic handgun, fifteen loose .22 rounds, and what
appeared to be illegal drugs.  

Sergeant Verrett determined that the van was
registered to William Gray and that it had a flat tire.  A subsequent search of the van revealed a
semi-automatic handgun in the center console. 
Laboratory tests of the substances in the bag revealed that it contained
6.45 grams of methamphetamine and 0.98 grams of Xanax. 








McIlroy was charged with the offenses of
possession of a firearm by a felon and possession of four or more but less than
200 grams of methamphetamine, and a jury found her guilty of both
offenses.  The trial court assessed
McIlroy=s
punishment at four years= confinement for each offense,
to be served concurrently.  In two
issues, McIlroy contends that the trial court erred by allowing the State to
read the entire indictment to the jury and by failing to provide the jury with
a complete definition of the term @firearm.@   

III.  The Reading of the Entire Indictment

The indictment charging McIlroy with possession
of a firearm by a felon alleged that McIlroy 

did intentionally and
knowingly possess a firearm and prior to said possession the defendant was
convicted of the felony offense of possession [of a] controlled substance of
less than one gram, namely: methamphetamine, to-wit: on the 10th day of
August, 2001, in the 371st District Court of Tarrant County, Texas, in Cause
Number 0768504D.  [Emphasis added.].

 








McIlroy informed the trial court and the State before trial that she
intended to stipulate to the previous felony conviction alleged in the
indictment.  She requested that the trial
court prohibit the State from Aalluding
to or reading any part of the indictment beyond the fact that she has been
convicted of a prior felony conviction,@ that
is, prohibit the State from mentioning the portion of the indictment italicized
above.  The trial court denied her
request.  McIlroy renewed her objection
after jury selection, and the trial court again overruled it.  The State then read the entire indictment to
the jury.  

In her first point, McIlroy contends that the
trial court erred by allowing the State to read the legal description of her
prior felony conviction to the jury because (1) she offered to stipulate to it
and to her status as a felon and (2) the language in the indictment describing
her prior felony conviction for possession of methamphetamine improperly
prejudiced the jury against her in the present trial for possession of
methamphetamine.  The State maintains
that it is statutorily authorized to read the entire indictment to the jury
and, alternatively, that any error did not affect McIlroy=s
substantial rights.  

A. 
Specific Description of Prior Felony Offense








The elements of the offense of possession of a
firearm by a felon are set forth in penal code section 46.04(a).  Tex.
Penal Code Ann. ' 46.04(a) (Vernon Supp.
2005).  That section provides, AA person
who has been convicted of a felony commits an offense if he possesses a
firearm . . . after conviction and before the fifth anniversary of the person=s
release from confinement following conviction of the felony.@  Id. 
(emphasis added).  Thus, the
particular type of prior felony offense committed by the defendant is not
relevant; the State is simply required to prove the defendant=s status
as a felon to satisfy the prior-felony-conviction element of the offense.  State v. Mason, 980 S.W.2d 635, 641
(Tex. Crim. App. 1998). 

Generally, A[t]he
indictment or information shall be read to the jury by the attorney
prosecuting.@ 
Tex. Code Crim. Proc. Ann.
art. 36.01(a)(1) (Vernon Supp. 2005). 
But A[w]hen prior convictions are
alleged [in the indictment] for purposes of enhancement only and are not
jurisdictional, that portion of the indictment or information reciting such
convictions shall not be read until the hearing on punishment is held.@  Id. 
Thus, article 36.01(a)(1) suggests by negative implication that when
prior convictions are alleged in the indictment for purposes other than
enhancement, the State may read the prior conviction allegations to the jury,
although the statute does not appear to require such a reading.  Tamez v. State, 11 S.W.3d 198, 201
(Tex. Crim. App. 2000).








The reading of the indictment serves two
purposes: it ensures that the accused is informed of the charges against him,
and it ensures that the jury is informed of the precise terms of the particular
charge against the accused.  Id. at
200-01.  The first purpose served by
reading the indictment is not furthered when the defendant stipulates to
particular charges; the defendant is obviously aware of the charges against her
if she stipulates to them.  Id. at
201.  The second rationale for reading
the indictment requires the trial court to strike a balance between providing
the jury with an understanding of the charges against the defendant while
preventing the jury from unduly focusing on substantially prejudical prior
convictions as evidence of the defendant=s Abad
character.@ 
Id. (prohibiting State from reading six prior DWI offenses
alleged in indictment; State permitted to read only two jurisdictional prior
DWIs necessary for offense of felony DWI).








In the present case, McIlroy stipulated that she
was a convicted felon. She stipulated to the prior felony conviction included
in the indictment, and the State accepted her stipulation.  The trial court nonetheless, over McIlory=s
objection, allowed the State to read to the jury the entire indictment,
including the specific description of McIlroy=s prior
felony convictionCfor Apossession
of a controlled substance less than one gram, namely: methamphetamine.@  But the offense of unlawful possession of a
firearm requires the State to prove only McIlroy=s status
as a convicted felon, not the particular prior felony offense that McIlroy
committed.  See Mason, 980 S.W.2d
at 641.  Thus, the dual purposes
underlying the reading of the indictment could have been accomplished here by
having the State omit from its reading to the jury the portion of the
indictment specifically describing McIlroy=s prior
felony conviction as Apossession of a controlled
substance less than one gram, namely: methamphetamine,@ as
McIlroy requested.  McIlroy understood
the charge against her: she stipulated to the prior felony; the jury would have
understood the charge against McIlroy even if the State had omitted reading the
description of the nature of her prior felony offense, and the jury would not
have been potentially prejudiced by the nature of McIlroy=s prior
felony conviction.

Although the trial court could have required the
State to omit from its reading of the indictment to the jury the specific type
of felony offense previously committed by McIlroy, the question remains whether
its failure to do so constituted an abuse of discretion.  The State argues that based on article 36.01,
Tamez, and Herring v. State,[1]
it was authorized to read the entire indictment to the jury, including the
specific description of McIlroy=s prior
felony conviction.













While article 36.01 does mandate that the
indictment be read, the court of criminal appeals in Tamez recognized
that this statutory mandate must be balanced against rule of evidence 403's
proscription against placing a defendant=s prior
convictions before the jury at the guilt-innocence phase if there is a strong
likelihood that the jury may improperly use the prior convictions in reaching
its present verdict.  Tamez, 11
S.W.3d at 202; see Tex. R. Evid.
403.  Consequently, in Tamez, the
court of criminal appeals held that in Tamez=s DWI
trial the State could not read to the jury the six prior DWIs alleged in the
indictment against Tamez.  Id. at
202-03.  The court of criminal appeals
held that the State could read to the jury only the two jurisdictional prior
DWIs alleged in the indictment.  Id.  Permitting the State to read the four other
DWI offenses alleged in the indictment created too great a likelihood that the
jury would be Aimproperly swayed to convict
appellant [of DWI] after the State presented conviction after conviction [for
DWI].@  Id. at 202.  Thus, Tamez expressly prohibits
the State from reading to the jury information in the indictment concerning the
defendant=s criminal history that is
inflammatory and more prejudicial than probative as violative of rule of
evidence 403.  Id. at 202-03
(holding that Aany prior convictions beyond the
two jurisdictional elements should not be read . . . during the State=s
case-in-chiefCas long as the defendant
stipulates to the two prior convictionsCas they
are without probative value and can serve only to improperly prove the
defendant=s >bad
character=@)
(emphasis added).  In Herring,
the defendant did not challenge in the court of criminal appeals the appellate
court=s ruling
that the trial court did not abuse its discretion by permitting the State to
read to the jury the portion of his indictment for failure to report as a sex
offender that described the type of underlying sex offense he had
committed.  147 S.W.3d at 391,
395-96.  Justice Womack=s
concurring opinion specifically noted that this issue was not raised in the
court of criminal appeals.  Id. at
397 (Womack, J. concurring).  The
majority in Herring nonetheless noted that the inference raised by
Herring=s prior
conviction for attempted indecency with a child was simply that Herring was a
criminal in general, as opposed to the stronger, more inflammatory Aconformity
inference@ that arises from substantially
similar offenses such as in Tamez where both the charged and prior
offenses were DWIs.  Id. at 396.

Accordingly, while article 36.01, Tamez,
and Herring all recognize that the State is entitled to read to the jury
the portions of the indictment that the State is required to prove to obtain a
conviction, nothing in article 36.01, Tamez, or Herring
authorizes the State during its case-in-chief to read nonjurisdictional
information from the indictment concerning the defendant=s
criminal history when that information is prejudicial and has no probative
value.  See Herring, 147 S.W.3d at
395-96; Tamez, 11 S.W.3d at 202-03. 
And when a defendant=s
criminal history involves crimes similar to the charges in the pending case,
the risk of unfair prejudice from providing the jury with this information
during the State=s case-in-chief is especially
obvious.  Herring, 147 S.W.3d at 396
n.21.








Finally, the Supreme Court=s ruling
in Old Chief v. United States likewise indicates that it is error to
permit the State to read to the juryCover the
defendant=s timely objectionCthe type
of prior felony conviction that the defendant committed to attain felon status
in a prosecution for possession of a firearm by a felon.  519 U.S. 172, 174, 117 S. Ct. 644, 647
(1997).  The Supreme Court in Old
Chief framed the issue presented to it as Awhether
a district court abuses its discretion if it spurns [a defendant=s offer
to stipulate to a prior felony conviction] and admits the full record of a
prior judgment, when the name or nature of the prior offense raises the risk of
a verdict tainted by improper considerations.@  Id. at 174, 117 S. Ct. at 647.








Old Chief was prosecuted in a joint trial for the
offenses of assault and possession of, and violence with, a firearm.  Id. at 175, 117 S. Ct. at 648.  Old Chief had been previously convicted of
the felony offense of assault causing serious bodily injury, and prior to trial
he requested that the government refrain from mentioning, by reading the
indictment or at any other time during trial, the nature of his prior felony
conviction except to say that he had been convicted of a crime punishable by
imprisonment exceeding one year.  Id.
at 175, 117 S. Ct. at 647-48.  Old Chief
explained that he was concerned that he would be unfairly prejudiced and that
the jury would not hold the government to its burden of proof concerning the
present charges if it learned that he had been previously convicted of assault
causing serious bodily injury.  Id.
After a lengthy discussion, the Supreme Court agreed with Old Chief and held
that the general rule when Aproof of
convict status is at issue,@ such as
in a prosecution for possession of a firearm by a felon, is that when the prior
felony offense is for an offense likely to support conviction on some improper
ground and when the defendant agrees to stipulate to the prior offense, then
the risk of unfair prejudice outweighs the probative value of disclosing the
type of prior offense.  Id. at
191-92, 117 S. Ct. 655-56.  When a prior
conviction is for a gun crime or for a crime similar to other charges in a
pending case, the risk of unfair prejudice is especially obvious.  Id. at 185, 117 S. Ct. at 652.  Therefore, the trial court abuses its
discretion by placing such information before the jury in light of the
defendant=s stipulation.  Id. at 191, 117 S. Ct. at 655.








Here, in addition to the offense of possession of
a firearm by a felon, McIlroy was charged with possession of
methamphetamine.  The prior conviction
alleged by the State in the indictment to demonstrate McIlroy=s status
as a felon was a previous felony conviction for possession of
methamphetamine.  So, just like Old
Chief, McIlroy=s status as a felon was alleged
to result from the prior commission of the same felony offense she was being
tried for committing; McIlroy was being tried for possession of methamphetamine
and she attained felon status as a result of a prior conviction for possession
of methamphetamine while Old Chief was being tried for assault and he attained
felon status as a result of a prior conviction for assault.  Old Chief offered to stipulate to the fact of
his prior felony conviction.  Id. at
172, 117 S. Ct. at 646.  McIlroy
offered to stipulate, and the State accepted her stipulation, to the fact of
her prior felony conviction.  For the
same reasons the Supreme Court held that the name and nature of Old Chief=s prior
felony offense were not admissible in his prosecution, the name and nature of
McIlroy=s prior
felony offense were not admissible in the present case.  Id. at 191-92, 117 S.
Ct. at 655-56.  We hold that the trial
court abused its discretion by permitting the State to read to the jury the
portion of the indictment describing the prior felony offense committed by
McIlroy as Apossession of a controlled
substance less than one gram, namely: methamphetamine.@  See Tamez, 11 S.W.3d at 201.

B.  Harm
Analysis








Having found error, we must conduct a harm
analysis to determine whether the error calls for reversal of the
judgment.  Tex. R. App. P. 44.2. Because the error is nonconstitutional,
we apply rule 44.2(b) and disregard the error if it did not affect appellant=s
substantial rights.  Tex. R. App. P. 44.2(b); see
Herring, 147 S.W.3d at 396; Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642-43 (Tex. App.CFort Worth 1998, pet. ref=d); see
also  Tamez v. State, 48 S.W.3d 295,
296 (Tex. App.CSan Antonio 2001, no pet.) (op.
on remand) (applying a Rule 44.2(b) analysis to the trial court=s error
in allowing the State to read the entire indictment to the jury).        A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  In making this determination, we
review the record as a whole.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  When performing a harm analysis under rule
44.2(b), we consider Aany testimony or physical
evidence admitted for the jury's consideration, the nature of the evidence
supporting the verdict, [and] the character of the alleged error and how it
might be considered in connection with other evidence in the case.@  Morales v. State, 32 S.W.3d 862, 867 (Tex.
Crim. App. 2000).  We may also consider
closing arguments, evidence of the defendant's guilt, and the jury
instructions.  See Motilla v. State,
78 S.W.3d 352, 355‑56 (Tex. Crim. App. 2002); Morales, 32 S.W.3d
at 867.








Although the State read the entire indictment to
the jury, during the remainder of its case-in-chief, the State did not mention
the name or nature of McIlroy=s prior
felony conviction.  Instead, to satisfy
its burden of proving a prior felony conviction, the State simply read into
evidence the parties= stipulation concerning McIlroy=s prior
felony conviction, which did not mention that the conviction was for possession
of less than one gram of methamphetamine. 
Likewise, based on an agreement between the parties, the specific
description of McIlroy=s prior felony conviction for
possession of less than one gram of methamphetamine was omitted from the jury
charge.  The State made no attempt to
introduce the judgment from her prior felony conviction or to introduce
evidence of that conviction, and the State did not mention the name of the
prior conviction in its jury arguments.

Further, overwhelming evidence exists supporting
McIlroy=s present
conviction for possession of methamphetamine and for possession of a firearm by
a felon.  Sergeant Verrett testified that
he found McIlroy unconscious with her hand inside a plastic bag that contained
a loaded magazine, .22 rounds, and illegal drugs, including
methamphetamine.  The magazine fit the
semi-automatic handgun found in the center console of the van.  The forensic chemist who examined the
substances found in the clear bag testified that the substances were illegal
drugs weighing more than four and less than 200 grams. 

We conclude that, in the context of the entire
case against McIlroy, the trial court=s error
in allowing the State to read the entire indictment, including the specific
description of McIlroy=s prior felony conviction, did
not have a substantial or injurious effect on the jury=s
verdict and did not affect McIlroy=s
substantial rights.  See King, 953
S.W.2d at 271.  Thus, we disregard the
error.  See Tex. R. App. P. 44.2(b).  We overrule McIlroy=s first
point.








IV.  No Error in Jury Charge on Definition of
Firearm

In her second point, McIlroy contends that the
trial court erred by failing to instruct the jury on the complete definition of
a firearm under the penal code. A Afirearm@ is
defined in the penal code as  

any device designed,
made, or adapted to expel a projectile through a barrel by using the energy
generated by an explosion or burning substance or any device readily
convertible to that use. Firearm does not include a firearm that may have,
as an integral part, a folding knife blade or other characteristics of weapons
made illegal by this chapter and that is:

 

(A) an antique or curio firearm manufactured before 1899; or

 

(B) a replica of an antique or curio firearm manufactured before 1899,
but only if the replica does not use rim fire or center fire ammunition.

 

Tex. Penal Code Ann. '
46.01(3) (Vernon 2003) (emphasis added). 
The trial court did not include the italicized portion of the definition
in its charge to the jury, and although McIlroy did not object to the omission
of this language, she claims the failure to submit it was error. 








When examining alleged jury charge error, we
first look to see if the error actually occurred and if the error was
preserved.  See Hutch v. State,
922 S.W.2d 166, 170‑71 (Tex. Crim. App. 1996).  Preserved error warrants reversal if any harm
is shown.  Id.  On the other hand, if the alleged error is
raised for the first time on appeal, then the appellant must show that the harm
resulting from the error was egregious, or so harmful that the appellant was
denied a fair and impartial trial.  Id.
at 171; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh'g).

The trial court=s charge
to the jury must set forth the law applicable to the case.  Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005).  Thus, the trial court must instruct the jury
on each element of the offense or offenses charged and include in its charge
each statutory definition that affects the meaning of an element of the
offense.  Murphy v. State, 44
S.W.3d 656, 661 (Tex. App.CAustin
2001, no pet.).  If a phrase, term, or
word is statutorily defined, the trial court must submit the statutory
definition to the jury.  Arline v.
State, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986); Murphy, 44
S.W.3d at 661. 








The penal code distinguishes exceptions to an
offense from defenses to an offense.  See
Tex. Penal Code Ann. ''
2.02-.03 (Vernon 2003).  The State must
negate an exception to an offense, but it is not required to negate a
defense.  See id. ''
2.02(b); 2.03(b).  Further, the State
must only negate exceptions that are specifically defined as exceptions.  See Ex parte Davis, 542 S.W.2d 192,
197 (Tex. Crim. App. 1976) (holding that the State need not negate implied
exceptions); Briggs v. State, 746 S.W.2d 331, 332-33 (Tex. App.CDallas
1988, pet. ref=d) (same); Kirk v. State,
643 S.W.2d 190, 194 (Tex. App.CAustin
1982, pet. ref=d) (stating that it is only
necessary to negate an exception that does not fall within a statutory
definition of the offense).       The
language in section 46.01(3) of the penal code providing that a firearm does
not include an antique or curio firearm, or replica thereof, is not labeled as
an exception.  See Tex. Penal Code Ann. '
46.01(3); Davis, 542 S.W.2d at 197; Briggs, 746 S.W.2d at 332-33,
Kirk, 643 S.W.2d at 194.  In fact,
it is settled law that the State is not required to prove that a firearm is not
an antique or curio firearm, or replica thereof.  Jackson v. State, 575 S.W.2d 567, 569
(Tex. Crim. App. [Panel Op.] 1979) (holding that Athe
possession of a weapon as an antique or curio was not made an exception
requiring the State to negate it@); Cantu
v. State, 802 S.W.2d 1, 2 (Tex. App.CSan
Antonio 1990, pet. ref=d) (same); cf. Scott v. State,
571 S.W.2d 893, 895 (Tex. Crim. App. [Panel Op.] 1978) (holding that State=s
failure to introduce evidence of the firearm=s date
of manufacture did not render the evidence insufficient to support a verdict of
guilty of possession of firearm by felon). 
Therefore, the defendant has the burden of proving that the gun was an
antique as defined in the penal code.  Cantu,
802 S.W.2d at 2. 








A defensive issue is not law applicable to the
case unless the defendant timely requests the issue or objects to the omission
of the issue in the jury charge.  See
Posey v. State, 966 S.W.2d 57, 61-62 (Tex. Crim. App. 1998); see also Tex. Code Crim. Proc. Ann. art.
36.14.  Article 36.14 imposes no duty on
the trial court to sua sponte instruct the jury on unrequested defensive
issues because these issues are not Alaw
applicable to the case@; they are simply issues that
were not raised at trial.  Posey,
966 S.W.2d at 61-62. In the present case,
McIlroy never raised the issue of whether the gun found in the van was actually
an antique or curio, there was no evidence at trial to suggest that the gun was
an antique or curio, and McIlroy did not object to the definition of a firearm
in the jury charge.  See id.  Accordingly, we hold that the trial court did
not err by omitting from the jury charge definition of a firearm the defensive
issue that a firearm does not include an antique or curio firearm, or replica
thereof.  See Tex. R. App. P. 33.1; Posey, 966
S.W.2d at 61-62.  We overrule McIlroy=s second
point.

V.  Conclusion

Having overruled both of McIlroy=s
points, we affirm the trial court=s
judgment.

 

 

SUE
WALKER

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: March 9, 2006








 











[1]147 S.W.3d 390 (Tex.
Crim. App. 2004).